**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**NELIDA BERNDES,** **CASE NO.: 1:26-cv-27061**

*Plaintiff,*

v.

**TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC,**

*Defendants.*
_______________________________________ /

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

1. Plaintiff, Nelida Berndes ("Plaintiff" or "Ms. Berndes"), brings this action against TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, including the FCRA. See also 15 U.S.C. § 1681p.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Miami-Dade County, Florida, Plaintiff resides in this judicial district, and Defendants conduct business within this judicial district.

## PARTIES

4. Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Miami-Dade County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant, Trans Union, LLC ("Trans Union"), is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

6. Defendant, Experian Information Solutions, Inc. ("Experian"), is a corporation organized under the laws of the State of Ohio. Experian is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

7. Defendant, Equifax Information Services, LLC ("Equifax"), is a limited liability company organized under the laws of the State of Georgia. Equifax is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

8. Trans Union, Experian, and Equifax shall collectively be referred to as the Credit Reporting Agencies ("the CRAs").

## STATUTORY FRAMEWORK

9. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title. 15 U.S.C. § 1681a(d)(1).

10. The terms "consumer report," "credit report," and "consumer credit report" are used synonymously herein.

11. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

12. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers of disputed credit reporting information, and for furnishers to respond to such disputes following the furnisher's investigation of the disputed information.

13. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant.

14. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes.

15. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

16. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

17. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response to each CRA with whom the furnisher has a reporting relationship, in addition to the response to the initiating CRA.

18. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

19. Trans Union, Experian, and Equifax each require data furnishers that report to them to register with and use e-OSCAR.

20. Negligent violations of the FCRA are actionable under 15 U.S.C. § 1681o; willful violations carry additional penalties and are actionable under 15 U.S.C. § 1681n.

## FACTUAL ALLEGATIONS

21. At all times relevant to this action, Plaintiff held an open-end consumer credit card account with Tropical Financial Credit Union ("TFCU"), which was assigned an account number ending in 3358 (the "Account").

22. Plaintiff used the Account primarily for personal, family, or household purposes.

23. On or about May 22, 2025, Plaintiff became the victim of an impersonation scheme in which a perpetrator, posing as a TFCU employee who identified himself as "Jason Smith,

Employee #24211," contacted Plaintiff from a telephone number spoofed to appear as TFCU's number.

24. As part of the scheme, the perpetrator obtained access to the Account and blocked Plaintiff from viewing her online banking activity, making it impossible for Plaintiff to monitor the unauthorized transactions as they occurred.

25. On May 22, 2025, while the Account was purportedly blocked, the perpetrator made two unauthorized charges on the Account: (a) $1,710.93 at Apple, Miami Worldcenter, in Miami, Florida; and (b) $1,389.93 at Best Buy in Hialeah, Florida.

26. The two unauthorized charges total $3,100.86 (the "fraudulent balance").

27. Plaintiff did not authorize, initiate, make, or benefit from the $3,100.86 in charges.

28. Plaintiff promptly reported the fraud to law enforcement, filing: (a) Plantation Police Department Case No. 2506000135 on June 3, 2025; (b) Miami Police Department Case No. PD50603162918 on June 3, 2025; and (c) an FTC Identity Theft Report, No. 188321843, on June 3, 2025.

29. Following the fraud, TFCU renumbered the Account so that it ended in 0316.

30. Despite Plaintiff's reports of fraud, TFCU furnished, and the CRAs reported, the fraudulent balance of $3,100.86 and a past-due status on the Account as if the charges were valid obligations of Plaintiff.

31. On or about August 29, 2025, Plaintiff sent written disputes to Equifax, Experian, and Trans Union (the "First Disputes").

32. In the First Disputes, Plaintiff disputed the $3,100.86 in fraudulent charges on the Account ending in 3358, described the impersonation scheme, identified the two specific unauthorized transactions at Apple and Best Buy, and provided the police report numbers.

33. Plaintiff enclosed with the First Disputes a copy of her driver's license, a utility bill, and her identity theft report.

34. By letter dated October 1, 2025, Equifax responded that it would not block the disputed information under Section 605B of the FCRA at that time, but stated that it would forward the dispute to the furnisher.

35. By letter dated October 1, 2025 (Report No. 0699-3891-62), Experian refused to take any action, claiming that the request "does not appear to have been sent directly by you or to be authorized by you."

36. Trans Union responded by declining to place a fraud block, claiming that the dispute was "too vague," despite the fact that Plaintiff had provided the exact range of dates of the fraud and the exact amount in dispute down to the penny.

37. On or about December 1, 2025, Plaintiff sent a second round of written disputes to Equifax, Experian, and Trans Union (the "Second Disputes").

38. In the Second Disputes, Plaintiff again disputed the $3,100.86 fraudulent balance and demanded that the information be blocked or removed, and enclosed a copy of her May 28, 2025 credit card statement with the fraudulent transactions highlighted.

39. By letter dated December 12, 2025 (Report No. 3270-4210-52), Experian again refused to take action, using the same boilerplate language, despite the fact that Plaintiff personally signed the letter and included the highlighted statement.

40. Equifax and Trans Union forwarded Plaintiff's disputes to the furnisher.

41. Experian did not forward Plaintiff's disputes to the furnisher.

42. The First Disputes and the Second Disputes shall collectively be referred to as the "Collective Disputes."

43. Notwithstanding the Collective Disputes, the CRAs continued to report the fraudulent balance of $3,100.86 and the past-due status on the Account as accurate (the "Inaccurate Information").

44. The Inaccurate Information was inaccurate and misleading because Plaintiff did not authorize or incur the $3,100.86 in charges, and the charges were the product of an impersonation scheme that Plaintiff reported to law enforcement.

45. The CRAs continued to report the Inaccurate Information despite Plaintiff's detailed account of the impersonation scheme, the police reports, and documentation showing that the Account was blocked at the time of the charges.

46. On or about September 9, 2025, Capital One, N.A. lowered the credit limit on Plaintiff's Quicksilver credit card account ending in 7511 to $6,000.00. In the accompanying adverse action notice, Capital One stated that the reason for the reduction was that "the credit reporting agency has reported a recent credit delinquency." Upon information and belief, that delinquency reflected the inaccurate, fraud-related TFCU account information described above.

47. On November 21, 2025, Plaintiff was denied a Discover it® card (Application No. 253251000041160) by Discover, a division of Capital One, N.A.

48. On or about December 16, 2025, Barclays increased the credit line on Plaintiff's Navyist Rewards Mastercard® account ending in 7739 to $3,900.00. Upon information and belief, Barclays obtained and reviewed Plaintiff's consumer report in connection with that account review, at a time when Plaintiff's consumer report continued to contain the Inaccurate Information.

49. After Plaintiff began disputing the Inaccurate Information, Plaintiff applied for and obtained a TD Fit personal loan from TD Bank in the principal amount of $7,000.00, requiring

monthly payments of $230.76; as of February 13, 2026, Plaintiff had paid $999.07 toward the principal of that loan.

50. On or about January 21, 2026, Plaintiff also applied for and obtained financing through Sunbit—offered by Transportation Alliance Bank, Inc., d/b/a TAB Bank—at Doral Hyundai (Agreement No. 76-506-763) to finance approximately $2,000.00 in necessary vehicle repairs, requiring a down payment of $532.10 and three-monthly installment payments of approximately $615.16.

51. Each of the creditors identified above obtained or received Plaintiff's consumer report or consumer credit information from one or more of the CRAs in connection with the credit decisions and account reviews described herein, at a time when those reports continued to contain the Inaccurate Information; the CRAs thereby published and disseminated the Inaccurate Information to third parties.

52. The CRAs' failure to conduct a reasonable investigation of, and to correct, the fraudulent charges totaling approximately $3,100.86 caused that amount to continue to be reported as part of the balance Plaintiff owed on the TFCU account, overstating her indebtedness and exposing her to additional interest and finance charges on that inflated balance.

53. As a result of the CRAs' conduct, Plaintiff has suffered damage to her credit reputation and creditworthiness, credit denials, loss of credit and the opportunity to benefit from credit, and emotional distress, including anxiety, anger, and frustration.

54. Plaintiff also incurred out-of-pocket costs, including payments made on the fraudulent balance to protect her credit rating and costs associated with pursuing the disputes.

**COUNT I — VIOLATIONS OF 15 U.S.C. § 1681i**
**(AGAINST TRANS UNION)**

55. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 33, 36 – 38, 40, and 42 - 54 as if fully set forth herein.

56. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

57. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

58. During the relevant time frame, Trans Union received Plaintiff's Collective Disputes regarding the accuracy and completeness of the TFCU account appearing on Plaintiff's consumer disclosure.

59. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the disputed information and by failing to correct, update, or delete the Inaccurate Information in Plaintiff's credit file after receiving actual notice of the inaccuracies contained therein.

60. Additionally, Trans Union unreasonably relied on information provided by TFCU when readily verifiable information that Plaintiff provided in the Collective Disputes placed Trans Union on notice that TFCU's information was inaccurate and unreliable.

61. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

62. Alternatively, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

63. As a result of Trans Union's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from

credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT II — VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**(AGAINST TRANS UNION)**

64. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 33, 36 – 38, 40, and 42 - 54 as if fully set forth herein.

65. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

66. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

67. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

68. Any users of consumer reports that viewed the TFCU account saw the Inaccurate Information.

69. Even after Plaintiff's Collective Disputes, Trans Union continued to report the TFCU account with the Inaccurate Information.

70. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71. Alternatively, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

72. As a result of Trans Union's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from

credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT III — VIOLATIONS OF 15 U.S.C. 1681c-2**
**(AGAINST TRANS UNION)**

73. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 33, 36 – 38, 40, and 42 - 54 as if fully set forth herein.

74. At all times relevant hereto, Trans Union is and was a “consumer reporting agency” as defined by the FCRA.

75. At all times relevant hereto, Plaintiff was a “consumer” as provided for under the FCRA.

76. During the relevant time period, Trans Union received Plaintiff’s First Dispute which attached a copy of her fraud reports and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

77. Additionally, Trans Union received Plaintiff’s Second Dispute which attached a copy of her May 28, 2025 credit card statement with the fraudulent transactions highlighted and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

78. Plaintiff disputed the validity of the Tropical Financial Credit Union account on her Trans Union credit report, identified herself, advised Trans Union of the fraudulent account, furnished Trans Union with a copy of the Police Report, Fraud Reports, and requested that Trans Union block the fraudulent information.

79. Rather than block the fraudulent information or request specific additional information from Plaintiff, Trans Union negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

80. Alternatively, Trans Union failed to block the Tropical Financial Credit Union account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

81. Trans Union’s acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

82. In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

83. As a result of Trans Union's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT IV — VIOLATIONS OF 15 U.S.C. § 1681i**
**(AGAINST EXPERIAN)**

84. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 6, 8 – 33, 35, 37 - 44, 47 – 54 as if fully set forth herein.

85. At all times relevant hereto, Experian is and was a “consumer reporting agency” as provided for under the FCRA.

86. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

87. During the relevant time frame, Experian received Plaintiff's Collective Disputes regarding the accuracy and completeness of the TFCU account appearing on Plaintiff's consumer disclosure.

88. Experian violated 15 U.S.C. § 1681i by failing to conduct any reinvestigation of the disputed information, and by refusing to take action, based on the pretextual claim that Plaintiff's disputes did not appear to have been sent by or authorized by Plaintiff, despite Plaintiff having personally signed and submitted the disputes.

89. Experian further violated 15 U.S.C. § 1681i by failing to forward Plaintiff's disputes to the furnisher, and by failing to correct, update, or delete the Inaccurate Information in Plaintiff's credit file after receiving actual notice of the inaccuracies contained therein.

90. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

91. Alternatively, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

92. As a result of Experian's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT V — VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**(AGAINST EXPERIAN)**

93. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 6, 8 – 33, 35, 37 - 44, 47 – 54 as if fully set forth herein.

94. At all times relevant hereto, Experian is and was a “consumer reporting agency” as provided for under the FCRA.

95. At all times relevant hereto, Plaintiff was a “consumer” as provided for under the FCRA.

96. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

97. Any users of consumer reports that viewed the TFCU account saw the Inaccurate Information.

98. Even after Plaintiff’s Collective Disputes, Experian continued to report the TFCU account with the Inaccurate Information.

99. Experian’s acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

100. Alternatively, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101. As a result of Experian's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2**
**AGAINST EXPERIAN**

102. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 6, 8 – 33, 35, 37 - 44, 47 – 54 as if fully set forth herein.

103. At all times relevant hereto, Experian is and was a "consumer reporting agency" as defined by the FCRA.

104. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

105. During the relevant time period, Experian received Plaintiff's First Dispute which attached a copy of her fraud reports and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

106. Additionally, Experian received Plaintiff's Second Dispute which attached a copy of her May 28, 2025 credit card statement with the fraudulent transactions highlighted and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

107. Plaintiff disputed the validity of the Tropical Financial Credit Union account on her Experian credit report, identified herself, advised Experian of the fraudulent account, furnished Experian with a copy of the Police Report, Fraud Reports, and requested that Experian block the fraudulent information.

108. Rather than block the fraudulent information or request specific additional information from Plaintiff, Experian negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

109. Alternatively, Experian failed to block the Tropical Financial Credit Union account and violated the FCRA by merely seeking verification of the disputed account from the furnisher

of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

110. Experian's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

112. As a result of Experian's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT VII — VIOLATIONS OF 15 U.S.C. § 1681i**
**(AGAINST EQUIFAX)**

113. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 7 – 34, 37, 38, 40, 42 – 45, and 50 - 54 as if fully set forth herein.

114. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

115. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

116. During the relevant time frame, Equifax received Plaintiff's Collective Disputes regarding the accuracy and completeness of the TFCU account appearing on Plaintiff's consumer disclosure.

117. Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the disputed information and by failing to correct, update, or delete the Inaccurate Information in Plaintiff's credit file after receiving actual notice of the inaccuracies contained therein.

118. Additionally, Equifax unreasonably relied on information provided by TFCU when readily verifiable information that Plaintiff provided in the Collective Disputes placed Equifax on notice that TFCU's information was inaccurate and unreliable.

119. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

120. Alternatively, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121. As a result of Equifax's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

## COUNT VIII — VIOLATIONS OF 15 U.S.C. § 1681e(b) (AGAINST EQUIFAX)

122. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 7 – 34, 37, 38, 40, 42 – 45, and 50 - 54 as if fully set forth herein.

123. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

124. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

125. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

126. Any users of consumer reports that viewed the TFCU account saw the Inaccurate Information.

127. Even after Plaintiff's Collective Disputes, Equifax continued to report the TFCU account with the Inaccurate Information.

128. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

129. Alternatively, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

130. As a result of Equifax's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

**COUNT IX – VIOLATIONS OF 15 U.S.C. §1681c-2**
**AGAINST EQUIFAX**

131. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 4, 7 – 34, 37, 38, 40, 42 – 45, and 50 - 54 as if fully set forth herein.

132. During the relevant time frame, Equifax was and is a "consumer reporting agency" as defined by the FCRA.

133. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

134. During the relevant time period, Equifax received Plaintiff's First Dispute which attached a copy of her fraud reports and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

135. Additionally, Equifax received Plaintiff's Second Dispute which attached a copy of her May 28, 2025 credit card statement with the fraudulent transactions highlighted and requested a block of the fraudulent information regarding the Tropical Financial Credit Union account.

136. Plaintiff disputed the validity of the Tropical Financial Credit Union account on her Experian credit report, identified herself, advised Experian of the fraudulent account, furnished Experian with a copy of the Police Report, Fraud Reports, and requested that Experian block the fraudulent information.

137. Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

138. Equifax failed to block the TFCU account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

139. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

140. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

141. As a result of Equifax's violations of the FCRA, Plaintiff suffered damage to her reputation for creditworthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress associated with the inaccurate information being disseminated to third parties and with being denied credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment against the CRAs and award the following relief:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses, and costs; and

e. Such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

142. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
**DEBT SHIELD LAW**
***/s/ Kevin Rajabalee, Esq.***
Kevin Rajabalee, Esq.
Florida Bar No. 119948
3440 Hollywood Boulevard, Suite 415
Hollywood, Florida 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw.com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
*Attorney for Plaintiff*